## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF MASSACHUSETTS, MARTY MEEHAN, in his official capacity as the President of the University of Massachusetts, and DAVID CASH, in his official capacity as Dean of the Graduate School of Policy and Global Studies at the University of Massachusetts Boston,<br><br>Defendants. | Civil Action No. 1:18-cv-11929-RGS |

## UNIVERSITY DEFENDANTS' OPPOSITION
## TO MOTION FOR PRELIMINARY INJUNCTION

I.    **Introduction.**

Plaintiff, Shiva Ayyadurai, is an independent candidate in Massachusetts for election to the United States Senate.  On September 12, 2018, he filed an action seeking to challenge what he anticipated would be his exclusion from three debates that he asserted were to be held in connection with the Senate race, on October 15, 21 and 30. Verified Complaint ("Compl."), ¶ 1, 6.  On September 14, 2018, Ayyadurai filed a motion seeking to enjoin each of these debates unless he is permitted to participate,

1

asserting that his anticipated exclusion would violate his rights under the First Amendment.  Dkt. 7.

For the reasons that follow, the Court should deny the motion.  The first debate, initially scheduled for October 15, was cancelled on September 5, one week before Ayyadurai filed this action.  Any claim he might have asserted with respect to this debate is moot.  The second debate, scheduled for October 21, is not co-sponsored by the University of Massachusetts ("the University"); indeed, the University is not involved in any respect in that debate.  Accordingly, that claim fails.  And as to Ayyadurai's challenge to his anticipated exclusion from the October 30 debate, no University entity will be participating in the determination of which candidates are invited to participate in that debate; that decision will be made by the co-sponsors, all of whom are private parties.  In addition, because the co-sponsors have not decided who will participate in the October 30 debate, or even exactly what criteria they will apply, the claim is not ripe.  Put plainly, Ayyadurai cannot demonstrate his rights are infringed by state action.  Finally, even where there is state action, it is permissible under the First Amendment to exclude ballot-qualified candidates from an electoral debate if that decision to exclude is made on viewpoint-neutral criteria, such as the candidate's lack of significant support among the voters.  Arkansas Ed. Tel. Comm'n v. Forbes, 523 U.S. 666 (1998).  Accordingly, there are multiple reasons why Ayyadurai's claims lack merit, and his motion for preliminary injunction should be denied.

II.    **Background.**

Ayyadurai has sued the University of Massachusetts, its President, and one of its

deans, seeking to challenge his anticipated exclusion from three debates planned in

connection with the 2018 election for United States Senate.  The facts relevant to the

University's involvement (or lack thereof) in these debates are set forth in the

contemporaneously filed Declarations of David W. Cash (Exhibit 1), John Kennedy

(Exhibit 2), and Jeff Cournoyer (Exhibit 3).  The declarations demonstrate the following.

A.    **Cancelled October 15 Debate.**  In August 2018, NBC10 Boston,

Telemundo Boston, NECN, The Boston Globe, WBUR and the Graduate School of

Policy and Global Studies at University of Massachusetts Boston ("McCormack School")

planned on sponsoring an October 15, 2018 debate for the Massachusetts United States

Senate election.  The debate was to be moderated by Chuck Todd of NBC's Meet the

Press and broadcast from the John F. Kennedy Presidential Library.   Exhibit 1, Cash

Decl., ¶ 2.  On approximately August 30, 2018, the sponsors sent a letter to Ayyadurai,

notifying him of the plans for the October 15, 2018 debate. Ex. 1, ¶ 3 and Ex. 1-A.  The

letter was signed by Dean David Cash, of the McCormack School, and by

representatives of The Boston Globe, WBUR, NBC10 Boston, Telemundo Boston,

NECN, and the John F. Kennedy Library Foundation.  Id., ¶ 3, and Ex. A.  The letter to

Ayyadurai, and letters sent to other Massachusetts candidates for the United States

Senate, stated in pertinent part:

> If your candidacy achieves a significant level of support, we invite you to participate [in the October 15 debate]. We will gauge that support by looking at three statewide opinion polls conducted by reputable news organizations or academic institutions prior to October 1, and average their figures. The threshold will be 15 percent of respondents supporting you – the same level of support used by both parties' endorsing conventions to determine primary ballot access.

Id. at ¶ 4 and Ex. 1-A.  The sponsors of the October 15 debate intended to rely only on polls that they anticipated would be conducted after the September 4, 2018 primary elections to determine which candidates achieved the threshold requirement of 15 percent support; they did not intend to base eligibility on any candidate's level of "visibility" as measured by the polls.  As the letter sent to Ayyadurai stated, the requirement was 15 percent of "support" for the candidates – the same level used by the Democratic and Republican Party conventions to determine primary ballot access.  Id. at ¶ 5.

During the evening of the September 4, 2018 primary election, Senator Elizabeth Warren's campaign announced that Senator Warren would participate in three debates – one on October 21, 2018, another on October 30, 2018, and a third on a date not then announced.  Id. at ¶ 6 and Ex. 1-B.  Because of Senator Warren's announcement, the sponsors of the October 15 debate decided to cancel it; this decision was made within 24 hours of the September 4, 2018 primary elections.  Id. at ¶ 7.  The decision to cancel the October 15 debate was made before the University received a letter from Ayyadurai's counsel objecting to his anticipated exclusion from the debate.  Id. at ¶¶ 7-9.

B.     **October 21 Debate**.  An affiliation known as the Western Massachusetts Media Consortium is currently planning an October 21, 2018 debate for the Massachusetts United States Senate election.  Exhibit 2, Kennedy Decl., ¶ 2.  The University of Massachusetts Amherst ("UMass Amherst") is not participating with the Western Massachusetts Media Consortium in the sponsorship of, or planning for, the October 21 debate.  Ex. 2, ¶ 4.  Any media report that listed UMass Amherst as involved in this debate is mistaken.[1]  Id.

Neither the University nor any of its schools or campuses is part of the Western Massachusetts Media Consortium involved in the October 21 debate.  Ex. 2, ¶¶ 5-6.  The University has no role or involvement in the October 21 debate at all.  Id. at ¶ 7.  As such, the University has not made and is not making any decisions concerning the participants in, or format of, the October 21 debate.  Id. at ¶ 8.  The University has no knowledge of the eligibility criteria for the October 21 debate, whether any criteria have yet been established, or any information concerning the criteria for or any other specifics concerning the October 21 debate.  Id. at ¶ 9.

The October 21, 2018 debate will not be held on University property.  Id. at ¶ 10. The University does not know where the October 21 debate will take place.  Id.

C.     **October 30 Debate.**  WCVB is taking the lead role in planning a debate in

---

[1] Six years ago, in October 2012, the University did participate in the Western Massachusetts Media Consortium in debate for the Massachusetts United States Senate election debate between Elizabeth Warren and Scott Brown.  Ex. 2, ¶ 4.

the United States Senate race scheduled for October 30, 2018, to be held at the WCVB

studios in Needham, Massachusetts.  Exhibit 3, Cournoyer Decl., ¶ 2-3, 7.  Working

with WCVB on the October 30 debate are The Boston Globe, Western Mass News, and

the University of Massachusetts President's Office ("University of Massachusetts

System").  Id. at ¶ 3.  The University of Massachusetts System has no role in

determining the criteria for candidate inclusion in the October 30 debate.  Id. at ¶ 6.   It

is the University's understanding that WCVB and one or more of the other partners will

develop and implement these criteria, and will likely base the criteria upon factors

including, but not limited to, a polling threshold.  Id.  To the University's knowledge,

the criteria will not be announced by WCVB until at least September 30, 2018, one

month prior to the October 30 debate.  Id.

        The University of Massachusetts System will make only the following decisions

concerning the October 30 debate: (a) decisions concerning the use of its mark in the

branding of the October 30 debate; (b) decisions concerning public communications

about the October 30 debate, and (c) it may choose a University-affiliated panelist to ask

questions of the candidates participating in the October 30 debate.  Id. at ¶ 8.  No other

University entity or campus has any role in the planned October 30 debate.  Id. at ¶ 9.

## III.   Argument.

        A preliminary injunction is "a drastic and extraordinary remedy," Monsanto Co.

v. Geertson Seed Farms, 561 U.S. 139, 165 (2010), which is "never awarded as of right,"

<u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008). "To obtain a preliminary injunction, the plaintiff bears the burden of demonstrating (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 120 (1st Cir. 2003). The last two factors "merge when the Government is the opposing party." <u>See</u> <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009).

The first factor – likelihood of success on the merits – is the "*sine qua non* of a preliminary injunction. If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." <u>Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.</u>, 794 F.3d 168, 173 (1st Cir. 2015) (Souter, J.) (citations omitted). "[T]he movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).

**A. <u>Ayyadurai Has No Likelihood Of Success On The Merits.</u>**

Ayyadurai's motion for preliminary injunction should be denied for the simple reason that there is no merit to any of his claims.

**1. Ayyadurai's Challenge to His Anticipated Exclusion from the October 15 Date is Moot because that Debate was Cancelled on September 5.**

In his Complaint, Ayyadurai recounts that he received a letter on August 30 co-signed by several parties sponsoring a debate then scheduled for October 15 at the JFK

Library in Boston; among the signers was defendant David Cash, Dean of the McCormack School.  Compl., ¶ 17, and Exhibit A (Aug. 30 Letter).  In the letter, the sponsors invited Ayyadurai to participate in the debate "[i]f your candidacy achieves a significant level of support[,]" which would be gauged "by looking at three statewide opinion polls conducted by reputable news organizations or academic institutions prior to October 1, and averag[ing] their figures.  The threshold will be 15 percent of respondents supporting you . . . ."  Compl., Ex. A.[2]  See Ex. 1, Cash Decl., ¶ 5.

In Count II, Ayyadurai sought to challenge his anticipated exclusion from the October 15 debate as a violation of his rights under the First Amendment.  His Complaint includes a conclusory assertion that the exclusion would be an act of "viewpoint discrimination" because there was no "legitimate or rational justification for prohibiting plaintiff's participation in the debates."  Compl. ¶¶ 52-53.

During the evening of the September 4, 2018 primary election, Senator Warren's campaign announced that the Senator would participate in three debates – one on October 21, 2018, another on October 30, 2018, and a third on a date not then

---

[2]   In his Complaint, Ayyadurai alleged that he was excluded from polls taken in March and May of 2018.  Compl., ¶ 18.  This allegation is demonstrably untrue.  In point of fact, Ayyadurai was included in both polls (conducted by MassINC for radio station WBUR), where his support ranged from 7% to 9% in separate matchups against Senator Warren and each of the three Republican primary candidates. See pages 2-3 at:  http://d279m997dpfwgl.cloudfront.net/wp/2018/03/Topline-2018-03-WBUR-Full-Release.pdf and http://d279m997dpfwgl.cloudfront.net/wp/2018/05/Topline-2018-05-WBUR-Gov-Sen-Ballot-Qs.pdf.  Furthermore, the co-sponsors of the planned October 15 debate had intended to utilize polls taken *after* the September 4 primary, and not polling from the previous spring.  Ex. 1, Cash Decl., ¶ 5.

announced.  Ex. 1, Cash Decl., ¶ 6.  As a result of the Senator's announcement, the

sponsors of the October 15 debate cancelled the event within 24 hours of the September

4, 2018 primary elections.  Id. at ¶ 7.[3]

Because the October 15 debate was cancelled, any claim that Ayyadurai might

have asserted to challenge his anticipated exclusion is moot, and must be dismissed.[4]

The Constitution "confines the jurisdiction of the federal courts to actual cases and

controversies."  ConnectU LLC v. Zuckerberg, 522 F.3d 82, 88 (1st Cir. 2008) (citing U.S.

Const. art. III, § 2, cl. 1).  "[W]hen an intervening event strips the parties of any legally

cognizable interest in the outcome, a case, once live, is rendered moot."  Barr v. Galvin,

626 F.3d 99, 104 (1st Cir. 2010) (internal quotation omitted).  Where a controversy

becomes moot, "Article III considerations require dismissal of the case."  Am. Civil

Liberties Union of Mass. v. U.S. Conf. of Catholic Bishops, 705 F.3d 44, 53 (1st Cir. 2013).

Here, because there is no dispute that the October 15 debate was cancelled, any

claim concerning the October 15 debate is moot.  Ayyadurai no longer has a cognizable

interest, and this Court could not provide relief (ordering Ayyadurai's participation or

---

[3]  On September 11, 2018 the University informed Ayyadurai that the "debate at UMass Boston had been postponed."  Compl., ¶ 25.  On September 19, University counsel confirmed to Ayyadurai's counsel that the October 15 debate was cancelled on September 5.

[4] On the afternoon of September 21, 2018, in response to the undersigned's September 19, 2018 letter concerning the viability of Count II, Ayyadurai provided a proposed Amended Complaint (deleting Count II) to the undersigned with an unclear condition that by filing it as of right he nonetheless wished to receive in return a stipulation to "keep to the original schedule."  In view of the press of time and the undersigned's need to have this opposition finalized and filed on September 21, 2018, the University's opposition to Ayyadurai's injunction motion, to the extent it is premised upon Count II, is included in this document to preserve the University defendants' rights.

otherwise) with respect to a debate that will not be held.  See Catholic Bishops, 705 F.3d at 52-53 (case is moot "when the court cannot give any effectual relief to the potentially prevailing party").  Thus, Count II must be dismissed.

### 2. The University Defendants Have No Involvement in the October 21 Debate: It is Sponsored Entirely by Non-University Parties.

The Western Massachusetts Media Consortium ("Consortium") is planning on holding a debate for the Senate race on October 21, 2018.  Exhibit 2, ¶ 2.  The Consortium includes a number of newspaper, television and radio outlets in western Massachusetts.  Although UMass Amherst previously participated in the Consortium, it is not participating, as a sponsor or otherwise, in the October 21 debate.  Id. at ¶¶ 3-4. The University has not been involved in planning the debate, and will have no role or involvement in it.  In particular, the University is not involved in setting the eligibility criteria for the October 21 debate or making any decisions about which candidates participate.  Id. at ¶¶ 7-9.  Accordingly, there is no basis for Ayyadurai's claim in Count I that the University defendants took (or will take) action with respect to this debate that infringes Ayyadurai's First Amendment rights.[5]  Put simply, Ayyadurai's conclusory assertions regarding the University defendants' alleged actions with respect to the October 21 debate (see Compl., ¶ ¶ 6, 22, 27-33) are incorrect.  Exhibit 2.

---

[5] Ayyadurai asserts "upon information and belief" that the October 21 debate is "co-sponsored by UMass." Compl., 29, 30.  As supported by Exhibit 2, this allegation is incorrect.

"[T]he "case or controversy" limitation of Art. III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42 (1976). See Allen v. Wright, 468 U.S. 737 (1984) (to have standing to sue, "[a] plaintiff must allege personal injury fairly traceable to the *defendant's* allegedly unlawful conduct and likely to be redressed by the requested relief") (emphasis added).  Here, because the University defendants are not involved in the October 21 debate, there is no "case or controversy" between Ayyadurai the University defendants with respect to the October 21 debate.  Ayyadurai, therefore, has no standing to sue the University defendants concerning the October 21 debate.  Accordingly, this claim must also be dismissed.

### 3. Because the University is Not Participating in the Determination of Which Candidates Will Participate in the October 30 Debate, Ayyadurai's Rights Will Not Be Affected by State Action.

As for Ayyadurai's claim with respect to the October 30 debate, it warrants dismissal (and, correspondingly, denial of Ayyadurai's request for preliminary injunction) because there is no state action.

The Boston *Globe*, WCVB, Western Mass News, and the University of Massachusetts System are planning to sponsor a debate in Boston on October 30, 2018. Exhibit 3, ¶ 3.  The eligibility criteria for the October 30 debate have not yet been set and will not likely be finalized until the end of September.  Id. at ¶ 6. The University, however, is not participating in determining the eligibility criteria, nor is it involved in

deciding who will be invited to participate in the October 30 debate.  Id.  It is the

University's understanding that WCVB and one or more of the other partners will

develop and implement these criteria, and will likely premise the criteria upon such

factors as a polling threshold.  Id.  The October 30 debate is scheduled to take place at

the WCVB studios in Needham, Massachusetts.  Id. at ¶ 7.  The University of

Massachusetts System will make only the following decisions concerning the October

30 debate: (a) decisions concerning the use of its mark in the branding of the October 30

debate; (b) decisions concerning public communications about the October 30  debate,

and (c) it may choose a University-affiliated panelist to ask questions of the candidates

participating in the October 30 debate.  Id. at ¶ 8.

No other University entity or campus has any role in the planned October 30 debate.

Id. at ¶ 9.  Even if Ayyadurai is not invited to participate in the October 30 debate, that

decision will be based only on actions of private parties (the other debate sponsors) –

not on actions of the University defendants.

A federal constitutional violation may result only from governmental action, not

simply from the conduct of private parties.  In all cases brought under 42 U.S.C. § 1983,

a plaintiff must establish that she was deprived of a right secured by the Constitution or

federal law, and that the deprivation was committed "under color of state law."

American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  "[T]he under-color-

of-state law element of § 1983 excludes from its reach merely private conduct, no matter

how discriminatory or wrongful." Id. at 50 (citations and quotation omitted).  The

federal courts adhere to this requirement "to assure that constitutional standards are

invoked only when it can be said that the State is *responsible* for the specific conduct of

which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in

original).  See also Yeo v. Town of Lexington, 131 F.3d 241, 248 (1st Cir. 1997) ("The

essential state action inquiry is whether the government has been sufficiently involved

in the challenged actions that it can be deemed responsible for the plaintiff's claimed

injury.").  "[T]he presence of state action is "a jurisdictional requisite for a Section 1983

action." Yeo, 131 F.3d at 248 n. 3 quoting Polk County v. Dodson, 454 U.S. 312, 315

(1981).

Here, because the debate co-sponsors are private parties acting independently,

what they decide with respect to who participates in the October 30 debate cannot

"fairly be attributed to the State." Blum, 457 U.S. at 1004.  See Brentwood Acad. v.

Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295-96 (2001) (discussing factors

typically considered by federal courts to find such attribution).  Nor do the University

defendants have an obligation to participate in the debate invitation process.  See Yeo,

131 F.3d at 253 (holding that school officials had no duty to control decisions of student

newspaper editors).  In comparable circumstances, federal courts have found no state

action, and consequently no constitutional liability, where the planning and

sponsorship of a candidate debate was primarily handled by private parties.  See, e.g.,

<u>Whitney v. Window to the World Commc'ns, Inc.</u>, 837 F.Supp.2d 854 (N.D. Ill. 2011)

(action against public broadcasting television station, which was located on property

leased from the state and which received state funding, dismissed for lack of state

action where no state actor involved in the decision to exclude plaintiff from candidate

debates).  Cf. <u>Johnson v. Suffolk Univ.</u>, 2002 WL 31426734, at *1 (D. Mass 2002) (Saris, J.)

(permitting use of university property for candidate debate was not a close enough

nexus to be state action) <u>citing</u> <u>DeBauche v. Trani</u>, 191 F.3d 499, 508 (4th Cir.1999) (state

university which provided a place for a debate on campus was not liable for the

decision of a radio talk show host to exclude a minor party gubernatorial candidate).

As these cases demonstrate, state action is also lacking here with respect to the October

30 debate, precluding liability under the First Amendment.

> **a. Ayyadurai's Challenge to His Anticipated Exclusion from the October 30 Debate Is Also Not Ripe Because the Responsible (Non-Governmental) Parties Have Not Decided Which Candidates Will Be Invited to Participate.**

In addition, Ayyadurai's challenge to his anticipated exclusion from the October

30 debate is not ripe because the non-University sponsors of that debate have not made

their determination as to who, if anyone, will be invited to participate (in addition to the

Democratic and Republican candidates, Senator Warren and Mr. Diehl).  As such, the

claim fails to present a "case or controversy" suitable for review under Article III.  <u>See</u>

<u>Texas v. United States</u>, 523 U.S, 296, 300 (1998) ("A claim is not ripe for adjudication if it

rests upon contingent future events that may not occur as anticipated, or indeed may

not occur at all."); <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d 530, 535 (1st

Cir. 1995) ("bedrock" ripeness inquiry is "whether the claim involves uncertain and

contingent events that may not occur as anticipated or may not occur at all") (citation

omitted).  A related, prudential component of the ripeness analysis asks "whether

resolution of the dispute should be postponed in the name of 'judicial restraint from

unnecessary decision of constitutional issues'; if elements of the case are uncertain,

delay may see the dissipation of the legal dispute without need for decision."  <u>Mangual

v. Rotger-Sabat</u>, 317 F.3d 45, 59 (1st Cir. 2003) (citation and quotation omitted).[6]

On these settled principles, this Court should not consider Ayyadurai's challenge

to his *anticipated* exclusion from the October 30 debate.  Even if Ayyadurai ultimately is

excluded, his claim could only be evaluated once the participant-eligibility criteria have

been developed, and applied, by the non-University sponsors of the debate.  As

explained below, there are reasonable, constitutionally permissible bases upon which

the sponsors may limit debate participation; this Court should not prematurely reach

out to consider the question until it is ripe and can, if necessary, be adjudicated on a

concrete factual record.

---

[6]  On an unripe claim, Ayyadurai also cannot demonstrate "injury in fact" sufficient to support standing to sue.  <u>Clapper v. Amnesty International USA</u>, 133 S. Ct. 1138, 1147 (2013) ("allegations of *possible* future injury are not sufficient" for standing) (emphasis in opinion).

**b.  In Any Event, Ayyadurai's First Amendment Rights Will Not Be Violated if He Is Excluded from the October 30 Debate on a Viewpoint-Neutral Basis, Such as Lack of Support By Massachusetts Voters.**

Finally, in addition to the absence of state action and the lack of ripeness, Ayyadurai's claim with respect to the October 30 debate fails because there is no constitutional violation where a candidate has been excluded from an electoral debate because of a lack of demonstrated voter support.

In <u>Arkansas Educational Television Commission v. Forbes</u>, 523 U.S. 666 (1998), the Supreme Court held that a state-owned public television station was not required under the First Amendment to allow every candidate who had legally qualified for the ballot to participate in a debate sponsored by the station.  <u>Id.</u> at 669, 682-83.  The Court held that "the debate was a nonpublic forum, from which AETC could exclude [a candidate] in the reasonable, viewpoint-neutral exercise of its journalistic discretion." <u>Id.</u> at 676.  The evidence in the case demonstrated that "Forbes was excluded not because of his viewpoint but because he had generated no appreciable public interest." <u>Id.</u> at 682.  <u>See</u> <u>also</u> <u>id.</u> at 683 ("His own objective lack of [voter] support, not his platform, was the criterion" upon which Forbes was excluded.).  As such, "[t]he broadcaster's decision to exclude Forbes was a reasonable, viewpoint-neutral exercise of journalistic discretion consistent with the First Amendment."  <u>Id.</u> at 683.

Following <u>Forbes</u>, federal courts have consistently rejected First Amendment claims by candidates who were excluded from electoral debates based on a lack of demonstrated voter support.  Most recently, the D.C. Circuit upheld the exclusion of the

16

Libertarian Party and Green Party candidates from a 2016 presidential debate because

they lacked a level of support of "at least 15% (fifteen percent) of the national electorate

as determined by" averaging the results of "five selected national public opinion

polling organizations."  Johnson v. Comm'n on Presidential Debates, 869 F.3d 976, 979

(D.C. Cir. 2017), cert. denied, 138 S. Ct. 1012 (2018).  Similarly, in Johnson v. Suffolk

University, the debate organizers limited participation to candidates who had achieved

"at least a 15% standing in the relevant polls."  2002 WL 31426734, at *2.  In that

circumstance, Judge Saris concluded that "exclusion of a candidate because her

candidacy generated no appreciable voter interest, according to objective criteria, is a

'reasonable, viewpoint-neutral exercise of journalist discretion.'"  Id. (quoting Forbes,

523 U.S. at 683); see also Alabama Libertarian Party v. Alabama Public Tel., 227 F. Supp.

2d 1213 (M.D. Ala. 2002) (Libertarian candidate for governor failed to show likelihood

of prevailing on merits, as limiting debate to those with demonstrated support was

content-neutral, reasonable regulation intended to ensure meaningful debate of value to

public).  Cf. Jenness v. Fortson, 403 U.S. 431, 442 (1971) (holding a state may deny

candidates ballot access for failure to reach "a significant modicum of [voter]

support").[7]  Accordingly, even if there were state action, Ayyadurai would have no First

---

[7]   In his memorandum, Ayyadurai has no response to Forbes, which holds that even where the debate is
sponsored exclusively by a state actor, candidates who have legally qualified for the ballot may be
excluded for lack of public support without violating the First Amendment.  Forbes, 523 U.S. at 683.
Instead, and contrary to its express holding, Ayyadurai cites Forbes for the proposition that a candidate
debate "is a limited public forum" — where exclusions are subject to more demanding judicial scrutiny
— rather than, as the case holds, a "nonpublic forum" subject to less searching scrutiny.  Compare

Amendment claim against a "reasonable, viewpoint-neutral decision" to exclude him from the October 30 debate for lack of demonstrated support.

### 4. The Court Lacks Jurisdiction to Adjudicate Ayyadurai's State-Law Claims.

In Count III, Ayyadurai asserts that "Defendants' exclusion of Plaintiff from their debates also constitutes a violation of Article 16 of the Massachusetts Declaration of Rights." Compl. 56. This claim must be dismissed under the Eleventh Amendment, which bars lawsuits in federal court against unconsenting States. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (any federal court lawsuit "in which the State or one of its agencies . . . is named as the defendant is proscribed by the Eleventh Amendment"). As state officials sued in their official capacities, *see* Compl. ¶ 11, defendants Meehan and Cash share in the Commonwealth's Eleventh Amendment immunity. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989); Maysonet-Robles v. Cabrero, 323 F.3d 43, 48–49 (1st Cir. 2003).

A key tenet of the Eleventh Amendment doctrine, first announced in Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984), prohibits lawsuits in federal court against state officials based on alleged violations of state law. See id. at 106. As

---

Compl., ¶¶ 31, 44, and Forbes, 523 U.S.at  676 ("Under our precedents, however, the debate was a nonpublic forum, from which AETC could exclude Forbes in the reasonable, viewpoint-neutral exercise of its journalistic discretion."). Indeed, "in most cases, the First Amendment of its own force does *not* compel public broadcasters to allow third parties [such as plaintiff] access to their programming." Forbes, 523 U.S. at 675. But, in a "narrow exception," the Court concluded that decisions made by a state-owned public broadcaster with respect to candidate debates are subject to limited judicial scrutiny applicable to a nonpublic forum. Id.

the Court explained in <u>Pennhurst</u>, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." <u>Id.</u>  The Court thus held that the exception to Eleventh Amendment immunity established in <u>Ex parte Young</u>, 209 U.S. 123 (1908)— which authorizes suits for prospective injunctive relief against state officials based on ongoing violations of *federal* law, <u>see</u> <u>supra</u>, note 5—is "inapplicable in a suit against state officials on the basis of *state* law." <u>Pennhurst</u>, 465 U.S. at 106 (emphasis added). And the Court also held that the bar applies as readily to "state-law claims brought into federal court under pendent jurisdiction." <u>Id.</u> at 121.  <u>Accord</u> <u>O'Brien v. Mass. Bay Transp. Auth.</u>, 162 F.3d 40, 44 (1st Cir. 1998).

<u>Pennhurst</u> prevents this Court from exercising jurisdiction over Ayyadurai's purported claim under the Massachusetts Declaration of Rights.  <u>See</u> <u>Villanueva v. United States</u>, 662 F.3d 124, 126 (1st Cir. 2011) (sovereign immunity "is jurisdictional in nature").  Accordingly, Count III is barred by the Eleventh Amendment and must be dismissed for lack of jurisdiction.

IV.    **Conclusion**.

For the foregoing reasons, the motion for preliminary injunction must be denied.

                                    Respectfully submitted,

Dated:         September 21, 2018        UNIVERSITY DEFENDANTS
                                    By their attorney,

                                    __/s/ Denise Barton_____
                                    Denise Barton, BBO No. 675245
                                    Senior Litigation Counsel
                                    University of Massachusetts
                                    Office of the General Counsel
                                    333 South Street, 4th Floor
                                    Shrewsbury, MA 01545
                                    Phone:  774-455-7300
                                    dbarton@umassp.edu


                        **CERTIFICATE OF SERVICE**


I certify that this document filed through the CM/ECF system on the above date will be
sent electronically to registered participants as identified on the Notice of Electronic
Filing (NEF) and paper copies will be sent to those indicated as non-registered
participants.


                                     /s/ Denise Barton_____
                                    Denise Barton