UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI, | ) |
|          Plaintiff, | ) |
| | ) |
| | ) |
|     v. | ) C.A. No. 1:18-cv-11929-RGS |
| | ) |
| | ) |
| THE UNIVERSITY OF MASSACHUSETTS, | ) |
| MARTY MEEHAN, DAVID CASH, | ) |
|          Defendants. | ) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

Between the announcement of the October 30, 2018 debate (the "Debate") on September 4, 2018 and the morning of October 3, 2018, the Debate hosts had not released any criteria through which candidates could participate. At 4:08 a.m. on October 3—the same day as the hearing before this Court for his motion for preliminary injunction—Dr. Ayyadurai finally received a list of criteria ("Criteria") setting forth the prerequisites needed for participation in the Debate. Through these Criteria, the Debate hosts, including Defendants, violate Dr. Ayyadurai's rights guaranteed by the First and Fourteenth Amendments to the United States Constitution because the Criteria cannot be justified by any state interest and constitute viewpoint discrimination.

The criteria letter sets forth four criteria that must all be met before Dr. Ayyadurai can participate in the Debate.[1] First, Dr. Ayyadurai must be a legally qualified candidate to appear on the ballot in Massachusetts and eligible to hold the office of United States Senator. Second, Dr. Ayyadurai must have clear evidence of a formal campaign. Third, Dr. Ayyadurai must meet a 10%

---

[1] The Criteria letter lists the University as a member of the Consortium hosting the Debate.

polling threshold. Specifically, "[a]t least 10 percent of people surveyed in two recent (i.e. post primary) independent polls must express their support for the candidate in the general election. The independent polls must be conducted by reputable media outlets or institutions (as determined by the Consortium) and published by October 19, 2018." Finally, Dr. Ayyadurai's campaign must have raised a minimum of $50,000 in individual contributions during the court of the election period. The letter concludes by placing the "burden of proof for determination of participation in the debate" on Dr. Ayyadurai, who must provide documentation and information to prove he meets all of the Criteria by October 19, 2018.

Despite being dated October 2, 2018, the Criteria were transmitted to Dr. Ayyadurai at 4:08 a.m. on October 3, 2018. Regardless of the coincidental nature of the creation of the Criteria on the same day this Court heard oral argument on Dr. Ayyadurai's motion for preliminary injunction—a coincidence made ever more extraordinary given Defendants' repeated assertions that they were not at all involved with determination of the debate criteria—it nonetheless afforded Dr. Ayyadurai's counsel no time to craft an appropriate response before the hearing. Accordingly, counsel takes this opportunity to do so now.

After hearing arguments from counsel for all parties, the Court correctly found that the Debate constitutes state action. The Court also determined, in light of the then-hours old Criteria, that Dr. Ayyadurai's claims would not ripen until October 19, the deadline to meet the Criteria.

Dr. Ayyadurai meets all of the Criteria. The polling data as publicly presented makes a mathematical error. The attached report from the Dr. Shah, a statistician from the Massachusetts Institute of Technology and an eminent scholar in the field of data analysis, demonstrates that all three post-primary polls incorporate a mathematical error in calculating the head-to-head favorability of every candidate including Dr. Ayyadurai. After correcting for this error, the head-

to-head favorability for Dr. Ayyadurai is 15% among very likely/likely voters; roughly 20% among registered voters; and, 41% among somewhat likely voters. As a result, Dr. Ayyadurai meets and exceeds the 10% polling threshold of the challenged Criteria across multiple voting groups and across multiple polls.

The "Consortium" that includes the University has barred Dr. Ayyadurai from participating in the Debate despite the submission of Dr. Shah's report and evidence that Dr. Ayyadurai has satisfied all of the Consortium's hastily established criteria.[2] More importantly, the polling threshold requirement is a Criterion that serves no valid governmental interest. As a result, this Court should order Defendants to permit Plaintiff's participation in the upcoming debate.

## ARGUMENT

Defendants' exclusion of Dr. Ayyadurai from the Debate violates his free speech rights under the First Amendment and his equal protection rights under the Fourteenth Amendment because his exclusion cannot be supported by a sufficient state interest and constitutes viewpoint discrimination.

"Premised on mistrust of governmental power" the First Amendment is at "'its fullest and most urgent application' to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339-40 (2010). Speech concerning salient political issues is constitutionally enshrined because it is "the type of speech [that is] indispensable to decision making in a democracy[.]" *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 776-77 (1978). "[R]egulations affecting

---

[2] Attached hereto as Supplemental Exhibit A is a communication sent to the Consortium on Wednesday, October 17, 2018 and the Consortium's response on Friday, October 19, 2018. The Consortium has now expressly prohibited Dr. Ayyadurai from participating in the Debate and did so without informing Dr. Ayyadurai of which criteria they determined he failed to meet and without providing any response to the report of Dr. Shah.

3

speech on government property that has been traditionally devoted to expressive activity, or on property, which although not traditionally open for assembly and debate *has been designated for these purposes by government*, is subject to the strictest of scrutiny." *Parow v. Kinnon*, 300 F. Supp. 2d 256, 267 (D. Mass. 2004) (Stearns, D.J.) (emphasis added) (citing *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). "[T]he State may reserve the forum for its intended purposes, communicative or otherwise*, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view*." *Perry*, 453 U.S., at 131, n. 7 (emphasis added). The Supreme Court has noted that:

> A burden that falls unequally on new or small parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and – of particular importance – against those voters whose political preferences lie outside existing political parties. By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas. Historically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream.

*Anderson v. Celebrezze*, 460 U.S. 780, 793-794 (1983) (internal citations and quotation omitted).

Dr. Ayyadurai is running as an Independent candidate in Massachusetts, where nearly 57% of the voters are registered as Independent without any major party affiliation. As discussed in the motion for preliminary injunction, candidate debates are subject to greater scrutiny, and the Debate is no exception. Mot. for Prelim. Inj. 8-10. *See also Libertarian Nat'l Comm., Inc. v. Holiday*, 2014 U.S. Dist. LEXIS 145969, * 14 (D.D.C. 2014). While we maintain that heightened scrutiny applies here, however, Defendants' exclusion of Dr. Ayyadurai fails under any level of scrutiny because it cannot be supported by a sufficient government interest, it is unreasonable, and it is arbitrary in all but name.

## I. DEFENDANTS CANNOT SUPPORT THE EXCLUSION OF DR. AYYADURAI FROM THE DEBATE WITH SUFFICIENT STATE INTEREST

Regardless whether Defendants and their Debate co-hosts exclude Dr. Ayyadurai arbitrarily, as they did prior to October 3, or exclude him based on *post hoc* justifications, they cannot support their exclusion, and the resulting suppression of Dr. Ayyadurai's protected political speech, with a sufficient government interest. Defendants, as state actors, may prohibit candidates from participating in debates in order to further interests such as avoiding the participation by a flood of non-serious candidates, which would "actually undermine the educational value and quality of debates." *Ark. Ed. Television Comm'n v. Forbes*, 523 U.S. 666 (1998). Defendants' actions further no such interest here because Dr. Ayyadurai is a serious candidate, there are only three ballot qualified candidates in this race, and Defendants have not argued that they have an interest in prohibiting Dr. Ayyadurai's debate participation. Moreover, Dr. Ayyadurai is an Independent candidate in Massachusetts, where nearly 57% of the registered voters are Independent having no affiliation with either major party.

First, Dr. Ayyadurai is a serious candidate. As discussed at length in the complaint, motion for preliminary injunction, and reply, Dr. Ayyadurai was the first candidate to announce his candidacy on February 2017 and was the first ballot qualified candidate in the race. Dr. Ayyadurai and his volunteers gathered nearly 20,000 signatures, of which they submitted a portion to the Secretary of State of Massachusetts to get nearly 12,000 certified to be the first on the ballot for the general election for U.S. Senate. By law, only 10,000 signatures are required to get on the ballot. Dr. Ayyadurai has been actively campaigning for this seat since February 2017 and has raised and spent roughly $5 million—roughly $200,000 of which came from individual contributions. Dr. Ayyadurai's candidacy has garnered national media attention (including Boston Globe, Washington Post, New York Times, Wall Street Journal, Boston Herald, NY Daily News,

National Public Radio, WGBH, Fox News, NBC, CNN, CBS, NECN, The Nation, Mother Jones, and Newsweek). Dr. Ayyadurai employs campaign staff and maintains a campaign office/headquarters. In this way, Dr. Ayyadurai is very different from nearly all of the plaintiffs in the cases Defendants have cited thus far. *See Forbes*, 523 U.S. at 682 (excluded candidate "described his campaign organization as 'bedlam' and the media coverage of his campaign as 'zilch.'") (cited by Defendants throughout their opposition brief); *Johnson v. Suffolk Univ.*, 2002 U.S. Dist. LEXIS 20762 (D. Mass. 2002) ("Recent polls cited by [the excluded candidate] demonstrate she has 1% of the vote." Further, the excluded candidate raised much less than Dr. Ayyadurai and does not appear to have had any appreciable media coverage or campaign infrastructure.); *Ala. Libertarian Party v. Ala. Public Tel.*, 227 F. Supp. 2d 1213 (M.D. Ala. 2002) (Excluded candidate only achieved 2% preference in polling. The polling threshold was only 5%, much lower than the threshold at issue here.); *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (Candidate could not gain access to the ballot because he could not get enough petition signatures or pay the filing fee, unlike Dr. Ayyadurai who was the first candidate to gain access to the ballot in this race).

Second, allowing Dr. Ayyadurai to participate, or removing the polling threshold criteria, will not result in a flood of candidates participating in the Debate thereby "undermin[ing] the educational value and quality of debate[]." *Forbes*, 523 U.S. at 681. There are only three ballot qualified candidates for United States Senate in Massachusetts this election cycle. Therefore, allowing them all (which means only one more than is currently permitted) to participate, will allow plenty of participation by all candidates without the "bedlam" or "cacophony" contemplated in *Forbes*. In this way, this case is different from the rest of the cases Defendants have cited, where the courts found that the government had an interest in conditioning candidate participation on

criteria. *See Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 979 (D.C. Cir. 2017) (at least six ballot qualified candidates); *Johnson*, 2002 U.S. Dist. LEXIS 20762 (five ballot qualified candidates, including three non-major party candidates). *See also Editorial: Why are organizers excluding Ayyadurai from U.S. Senate debates?*, THE LOWELL SUN (Sept. 15, 2018), http://www.lowellsun.com/breakingnews/ci_32140531/why-are-organizers (discussing the 3rd Congressional District Democratic primary debates co-hosted by the Lowell Sun, which included all 10 candidates) ("[I]f we can accommodate 10 candidates -- because it is the right thing to do -- why can't The Boston Globe, WBZ-TV, WCVB-TV, Springfield news outlets, the Springfield Public Forum, and UMass-Boston, do the same?"); *EDITORIAL: Why are organizers excluding Ayyadurai from U.S. Senate debates?*, Sentinel & Enterprise (Sept. 17, 2018), http://www.sentinelandenterprise.com/editorial/ci_32140491/why-are-organizers-excluding-ayyadurai-from-u-s-senate-debates (*accord*); *Our View: Senate debates should include all three candidates*, THE EAGLE TRIBUNE (Oct. 17, 2018), https://www.eagletribune.com/opinion/our-view-senate-debates-should-include-all-three-candidates/article_84ae3031-4c76-5f6e-b9b6-6d8df97cf5e4.html ("Party affiliation, or lack thereof, shouldn't be prerequisite to debate, especially in a state where more than half of all voters don't declare a party affiliation. When Warren and Diehl face each other, Ayyadurai should be standing next to them."); *Our view: Senate debates should include all three candidates*, THE SALEM NEWS (Oct. 18, 2018), https://www.salemnews.com/opinion/editorials/our-view-senate-debates-should-include-all-three-candidates/article_add01099-fa71-51ac-ba94-e30a184b2961.html (*accord*); *EDITORIAL: Senate debates should include all three candidates*, THE DAILY NEWS (Oct. 18, 2018), https://www.newburyportnews.com/editorials/editorial-senate-debates-should-include-all-three-candidates/article_cb5488a3-b5fb-5ff4-b6d7-1682be5801cb.html (*accord*).

Furthermore, similar debates have operated successfully in the past with the participation of more than two candidates and candidates who polled well below 10%. The 2014 Massachusetts gubernatorial debate hosted by WBZ-TV included all five ballot qualified candidates including one Republican, one Democrat, one United Independent, and two Independent candidates. The only requirement to be on the stage was to get 10,000 signatures, as Dr. Ayyadurai has accomplished. *[2014] Massachusetts Gubernatorial Debate*, C-SPAN (Oct. 7, 2018), https://www.c-span.org/video/?321895-1/massachusetts-governors-debate. *See also 2014 Massachusetts Governor – Baker vs. Coakley Polling Data*, Real Clear Politics, https://www.realclearpolitics.com/epolls/2014/governor/ma/massachusetts_governor_baker_vs_coakley-3266.html (last visited Oct. 18, 2018) (showing some debate participants polling as low as 1%). The 2010 Massachusetts gubernatorial debate hosted at the University, included four gubernatorial candidates, some of whom were also polling lower than Dr. Ayyadurai. Steve LeBlanc, *Gov hopefuls talk ed funding*, BRATTLEBORO REFORMER (Sept. 30, 2010), https://www.reformer.com/stories/gov-hopefuls-talk-ed-funding,117741; Will Richmond, *Massachusetts candidates for governor set to debate at UMass Dartmouth*, WICKED LOCAL/SWANSEA (Sept. 2, 2010), http://swansea.wickedlocal.com/x861577472/Massachusetts-candidates-for-governor-set-to-debate-at-UMass-Dartmouth; *2010 Massachusetts Governor – Baker vs. Patrick vs. Cahill Polling Data*, REAL CLEAR POLITICS, https://www.realclearpolitics.com/epolls/2010/governor/ma/massachusetts_governor_baker_vs_patrick_vs_cahill-1154.html (last visited Oct. 18, 2018) (showing some debate participants polling as low as 1%). Just this year, the University sponsored and hosted two 3rd Congressional District Democratic Primary debates, each with six different candidates participating, some of who polled at only 1% or less. *2018 3rd District Congressional Debates*, UMASS LOWELL,

https://www.uml.edu/Research/public-opinion/debates/3rd-Congressional.aspx (last visited Oct. 18, 2018); Chris Lisinski, *Das, Littlefield blast UMass Lowell debate criteria*, THE LOWELL SUN (Apr. 26, 2018), http://www.lowellsun.com/breakingnews/ci_31834441/das-littlefield-blast-uml-debate-criteria.

Accordingly, allowing all ballot qualified candidates to participate in the debate, will not somehow open the floodgates to non-serious candidates because all three ballot qualified candidates *are* serious candidates and there are only three of them. *Cf. Forbes*, 523 U.S. at 679; *Libertarian Nat'l Comm., Inc.*, 2014 U.S. Dist. LEXIS 145969, * 24-27; *supra* at 8-9. Therefore, there is no legitimate or rational justification for prohibiting Dr. Ayyadurai's participation in the Debate.

Third, despite counsel for Dr. Ayyadurai arguing vigorously that the Defendants have no legitimate interest or justification in prohibiting Dr. Ayyadurai from participating in the debate, Compl. at 9-10; Mot. Prelim. Inj. at 7, 13-15, 19-20; Oral Argument generally, and Defendants responding to those arguments in their opposition brief, Opp. Br. at 16-18, Defendants have never once argued that they indeed have a legitimate government interest in excluding the third and only other legally qualified candidate from the debate. In fact, it is a reasonable to read their arguments in their opposition brief and during oral arguments, insisting that there is no government action, to mean that they indeed do not have an interest in prohibiting Dr. Ayyadurai. How can the University have an interest in something they previously denied taking part in? Nevertheless, the Defendants and the University have no legitimate or reasonable interest in prohibiting ballot qualified candidates from participating in their debate. Accordingly, Dr. Ayyadurai's exclusion from the Debate is unconstitutional under the First and Fourteenth Amendments and he is therefore likely to succeed on the merits of his claim.

## II. THE HASTILY-ESTABLISHED CRITERIA CONSTITUTE VIEWPOINT DISCRIMINATION

### A. Polling Is Not A Not A Reasonable Method Of Gauging Support For Independent Candidates

While polling may be *one* factor used to determine demonstrated voter support, it should not be *the* determinative factor in prohibiting protected political speech. This is especially true when polling is used to determine voter support/favorability of Independent or third party candidates and conditioning their participation in debates on such support/favorability.

As discussed in length in the Report of Dr. Devavrat Shah,[3] (which provides an analysis of the three existing post-primary polls without making any forecasts or projections), attached hereto as Supplemental Exhibit B, reveals that the three post-primary polls rely on a fundamental mathematical error in calculating the head-to-head favorability all candidates including Dr. Ayyadurai. Specifically, the polls are dividing by the wrong number (the denominator) when calculating the head-to-head favorability percentages for each candidate. Even more specifically, they are dividing by a denominator, which assumes that all candidates are at near 100% visibility. This error has historically not been detected. The polls, in summary, fail to appropriately account for visibility when calculating their percentages, which clearly skew the assessment of a third-party candidate's standing. Supp. Ex. B. Accordingly, in correcting for these inaccuracies, Dr. Ayyadurai's favorability, calculated using the correct denominator, is between 14% and 16% for very likely/likely voters; roughly 20% among registered voters; and, 41% among somewhat likely voters. Supp. Ex. B. Moreover, given Dr. Ayyadurai's affiliation as an Independent candidate,

---

[3] Dr. Shah is a professor in the Department of Electrical Engineering and Computer Science and the Director of Statistics and Data Science Center at the Massachusetts Institute of Technology. Dr. Shah's Curriculum Vitae is attached hereto as Supplemental Exhibit C.

which also happens to be the affiliation of the vast majority of Bay Staters,[4] his candidacy will have an impact on who turns out and in what numbers. Supp. Ex. B. The analysis also reveals that 75% of those who are predicted to vote for Dr. Ayyadurai will be Independents. Further, polling of Independent likely voters is skewed because, given the fact that they are not affiliated with a major party, they are less likely to identify as likely voters, even if they do vote. For example, the poll conducted by the University and the Boston Globe determined that while 60% of both Democrats and Republicans were classified as "likely voters" only 45% of Independents, Dr. Ayyadurai's base, were classified as likely voters. Because the polls only counted likely voters and very likely voters in their poll, there will clearly be a sample bias against Independent candidates and Dr. Ayyadurai, artificially keeping him from participating in the Debate. This inaccuracy is evidenced in the University/Boston Globe poll by the higher margin of error for likely voters (+/-5.6%) compared to registered voters (+/-4.4).

Further, utilizing polling thresholds as the determinative factor for admission into debates is not reasonable or fair to third party candidates because they are effectively designed to keep third party candidates out. *See Level the Playing Field v. FEC*, 232 F. Supp. 3d 130, 141-45 (D.D.C. 2017) (discussing evidence that using polling data to gauge demonstrated support is unreliable both generally and for Independent or third party participation in debates). Few third party candidates can achieve polling thresholds since they do not have the backing of a major party. *See id*. at 143-44. Further, in order to achieve demonstrated support as shown by polling,

---

[4] As of August, 2018 there are a total of 4,493,007 registered voters in Massachusetts, of which 2,474,535 are unenrolled (Independent), 1,492,399 are registered Democrats, and 465,952 are registered Republicans. Office of the Secretary of the Commonwealth of Massachusetts, *Massachusetts Registered Voter Enrollment: 1948–2018*, https://www.sec.state.ma.us/ele/eleenr/enridx.htm (last visited Oct. 16, 2018).

third party candidates must spend a disproportionate amount of money compared to their major party counterparts to achieve the visibility necessary to achieve poll performance. *See id*. Accordingly, polling criteria are not objective, but instead designed to keep third-party or independent candidates out of debates. *See id*. at 143. *See also id*. at 145 (crediting evidence as being of substantial weight where that evidence showed that a polling threshold criteria was designed to keep candidates not from major parties out of debates).

Even *Forbes*, 523 U.S. 666, a case Defendants rely so heavily on, did not employ *polling threshold* criteria, as they do here. Defendants in that case instead relied on a more holistic set of criteria, which were necessary in that case to keep out a flood of less-than-serious candidates. The Criteria here are much more severe and exclusionary to minor party/Independent candidates, like Dr. Ayyadurai. Indeed, Dr. Ayyadurai, while being excluded from the Debate at issue in this case, would have qualified to participate in the debate at issue in *Forbes*.

Simply put, polls are not accurate or reasonable representations of which candidates are "serious" or enjoy demonstrated support[5] and therefore should not be used as determinative factors for participation in political speech by state actors. Accordingly, the Defendants' use of polling as a necessary criterion Dr. Ayyadurai must overcome is violative of Dr. Ayyadurai's rights under the First and Fourteenth Amendments to the United States Constitution.

---

[5] Although Dr. Ayyadurai concedes that there is federal precedent to "partially" support the point that lack of demonstrated voter support is a valid justification to exclude a candidate from a debate, Pls. Reply Br. at 7-8 (ECF 15), the point is that the polls used here—and polls generally—are both statistically biased and unreliable to sufficiently gauge voter support for Independent candidates, especially when used as necessary criteria and failing to account for the impact of visibility on third party candidates.

### B. The Criteria Constitute Post Hoc Justification For Viewpoint Discrimination

Under these circumstances, the Criteria constitute viewpoint discrimination because they are designed to and have the effect of preventing just one candidate from participating in the Debate—Dr. Ayyadurai.

First, it does not appear that Dr. Ayyadurai's opponents who are endorsed by either major party received this same letter. In fact, based in a letter produced by Defendants in their Opposition Brief, Defendants invited Dr. Ayyadurai's Democratic opponent, Elizabeth Warren, to not only participate in the Debate but also decide when the Debate was to be held. Defs.' Ex. 3-A. This invitation was not conditioned on Elizabeth Warren's satisfaction of any criteria and was sent on August 14, 2018, a full month and a half before Dr. Ayyadurai received the Criteria. Accordingly, even if Dr. Ayyadurai's major-party opponents received the Criteria letter, their participation in the Debate was all but promised by the Consortium ahead of time.

Further, the Criteria were created after or during all of the polls through which they condition participation in the Debate. All of those polls were conducted by or on behalf of Defendants' Consortium co-hosts. The one poll that had not yet concluded by the release of the Criteria had begun 2 days prior and was conducted by the University and the Boston Globe—both hosts of the Debate. Accordingly, Defendants knew or could easily have known that the Criteria would exclude Dr. Ayyadurai, and only Dr. Ayyadurai, from the Debate. Defendants cannot now save themselves simply by creating facially objective criteria *post hoc* which do exactly what they were doing before in an arbitrary manner—excluding Dr. Ayyadurai based on his party affiliation. And once again, these polls were conducted without correcting for visibility as demonstrated by Dr. Shah's report.

Such retroactive justification cannot stand in a case such as this one where the First Amendment is at "its fullest and most urgent application." *Citizens United*, 558 U.S. at 339-40. "[T]he State may reserve the forum for its intended purposes, communicative or otherwise, *as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view*." *Perry*, 453 U.S., at 131, n. 7 (emphasis added). "[P]ost hoc justification . . . cannot satisfy the requirement that 'viewpoint neutral' regulations abridging speech must be narrowly tailored to achieve substantial governmental interests." *Regan v. Time, Inc.*, 468 U.S. 641, 688 n. 27 (1984). *See also* 60 Fed. Reg. 64,262 (1995) (In order to qualify for the safe harbor provisions of the Federal Election Campaign Act of 1971 ("FECA"), organizations that stage presidential debates "must be able to show that their objective criteria were used to pick the participants, and that the criteria were not designed to result in the selection of certain pre-chosen participants."); *Buchanan v. FEC*, 112 F. Supp. 2d 58, 74-76 (D.D.C. 2000) ("the objectivity requirement precludes debate sponsors from selecting a level of support so high that only the Democratic and Republican nominees could reasonably achieve it.") (affirming the FEC's interpretation permitting polling threshold only because of the substantial deference it had to accord to the FEC's interpretation of its own regulations and the extremely heavy burdens plaintiffs must have overcome, unlike in this case).

The Criteria are *post hoc* justification in order to further the pre-determined exclusion of Dr. Ayyadurai from the Debate. The utilization of the Criteria therefore constitute viewpoint discrimination in violation of the First and Fourteenth Amendments.

## CONCLUSION

Because Defendants' utilization of polling thresholds in the Criteria violate Dr. Ayyadurai's rights under the First and Fourteenth Amendments, Dr. Ayyadurai is likely to succeed

on the merits of his claim. Accordingly, he respectfully requests this Court grant his motion for preliminary injunction.

Respectfully submitted,

October 19, 2018  /s/ *Timothy Cornell*
Boston, MA  Timothy Cornell BBO # 654412
 Cornell Dolan, P.C.
 One International Place, Suite 1400
 Boston, MA 02110
 (617) 535-7763
 (617) 535-7650 (fax)
 tcornell@cornelldolan.com

 Jason Torchinsky (VA 47481)
 Dennis W. Polio (CT 438205)
 (Pro hac vice applications to be filed)
 HOLTZMAN VOGEL
 JOSEFIAK TORCHINSKY PLLC
 45 North Hill Drive, Suite 100
 Warrenton, VA 20186
 (540) 341-8808
 Fax: (540) 341-8809
 jtorchinsky@hvjt.law
 dwpolio@hvjt.law

## **CERTIFICATE OF SERVICE**

      I will file the foregoing document with the Clerk of this Court using the CM/ECF system which instantaneously sent a Notice of Electronic Filing to all counsel required to be served.

<u>/s/ Timothy Cornell</u>
Timothy Cornell
