UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11929-RGS

DR. SHIVA AYYADURAI

v.

THE UNIVERSITY OF MASSACHUSETTS,
MARTY MEEHAN, and DAVID CASH

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION

October 22, 2018

STEARNS, D.J.

Dr. Shiva Ayyadurai brought this equitable action against the University of Massachusetts, its President, Marty Meehan, and Dean David Cash,[1] alleging that his exclusion by the University from three publicly televised U.S. Senate candidate debates violates the First and Fourteenth Amendments of the U.S. Constitution.[2] He prays for injunctive relief in the

---

[1] David Cash is the Dean of the McCormack Graduate School of Policy and Global Studies at the University of Massachusetts Boston.  Compl. ¶ 16.

[2] On September 24, 2018, Ayyadurai voluntarily dismissed Count III, which had alleged violations of Massachusetts law.  Pl.'s Reply (dkt # 15) at 1 n.1.

form of a court order compelling the sponsors of the debates to include him as a co-equal participant in the remaining debate(s).

## BACKGROUND

Dr. Ayyadurai is running as an Independent for the Massachusetts Senate seat presently occupied by Senator Elizabeth Warren. Compl. ¶ 2. His is a serious candidacy. He has raised roughly $5 million in campaign contributions, recruited a campaign organization, and has earned some media attention from, among other publications, the Boston Globe and the New York Times. Compl. ¶ 13. In the three most recent polls conducted by Boston Globe/Suffolk University, WBUR/MASSInc, and UMASS Lowell/Boston Globe, Dr. Ayyadurai was preferred by 5%, 3%, and 8% of potential voters, respectively. Pl.'s Suppl. Br., Ex. B (dkt # 22-2) App. A.

On August 30, 2018, Dr. Ayyadurai was invited by Dean Cash to take part in an October 15, 2018 televised debate, contingent upon his showing of a threshold level of support in a reputable voter survey. Compl. ¶ 17. On September 5, 2018, before the invitation was formalized or withdrawn, Senator Warren announced she would not participate and the debate was cancelled.[3]

---

[3] As the court noted at the October 3, 2018 hearing, Ayyadurai's claims regarding the October 15, 2018 debate are moot because of the cancellation. *See Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003), quoting *Steffel*

A second Senatorial candidate debate was hosted by The Western Massachusetts Media Consortium on October 21, 2018. Dr. Ayyadurai was not invited. However, as the court noted at the October 3, 2018 hearing on the instant motion, the University of Massachusetts played no role in the planning or sponsorship of the debate, and consequently, Dr. Ayyudarai had no constitutional standing to challenge his exclusion.[4]

This is not the case, however, with a final debate being planned for October 30, 2018. While WCVB-TV is the principal organizer of this debate,

---

*v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review . . . .'"); *Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir. 2013) ("Article III considerations require dismissal of [a moot] case.") (internal citations and quotation marks omitted).

[4] At the hearing, Dr. Ayyadurai cited case law conferring state action standing where a private entity had acted in essence as a catspaw for the State (noting an instance in 2012 in which the University of Massachusetts and The Media Consortium had collaborated on hosting a candidate debate). However, under this doctrine, state action will attach only where the government entity directly participates in the challenged decision or conduct. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-843 (1982); *Phillips v. Youth Dev. Program, Inc.*, 390 Mass. 652, 655-656 (1983). Dr. Ayyadurai offered no evidence that the University had any role in the decision-making surrounding the October 21 debate. *See Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

the station is working with the University (through President Meehan's Office), in addition to the Boston Globe and Western Mass News, in planning the event. While the University claims that its role is limited to decisions regarding the use of its mark in branding and publicizing the event, and the designating of a University-affiliated panelist-moderator, these are sufficient indicia of State participation, at least for present purposes, to implicate constitutional norms and protections.[5]

On October 2, 2018, the debate hosts announced four criteria to be used in determining the eligibility of a candidate to participate. *See* Pl.'s Suppl. Decl. Ex. 2 (dkt # 17-2). First, the candidate must be qualified, meaning that he or she is on the ballot and eligible to serve as a United States Senator. Second, "[t]he candidate must have clear evidence of a formal campaign." *Id.* Third, the candidate must have the support of at least 10% of likely voters in two recent independent polls published by October 19, 2018. Finally, the candidate must have raised at least $50,000 in individual contributions. It is conceded by defendants that Dr. Ayyadurai meets all but the third criterion.

---

[5] Although other private actors are participating, the University is still "sufficiently involved in the challenged actions that it can be deemed responsible for [Ayyadurai's] claimed injury." *Yeo v. Town of Lexington*, 131 F.3d 241, 248 (1st Cir. 1997).

## DISCUSSION

"[T]he test governing the award of a preliminary injunction . . . requires consideration of (1) the movant's likelihood of success on the merits, (2) the potential for irreparable harm, (3) a balancing of the relevant equities, and (4) the effect on the public interest." *Campbell Soup Co. v. Giles*, 47 F.3d 467, 470 (1st Cir. 1995). "Likelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996). This is one of those instances in which a Supreme Court decision is squarely on point: To succeed, Dr. Ayyadurai must prove that the criteria under which he was excluded from the October 30 debate are not reasonable or viewpoint neutral. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 682 (1998) ("To be consistent with the First Amendment, the exclusion of a speaker from a nonpublic forum must not be based on the speaker's viewpoint and must otherwise be reasonable in light of the purpose of the property.").

In challenging the criteria, Dr. Ayyadurai focuses, as would be expected, on the polling requirement, arguing that it is unreasonable as it sets an arbitrary threshold of 10% that most independent candidates would

find insurmountable.[6] He also relies on the opinion of Dr. Devavrat Shah, a Massachusetts Institute of Technology statistician, that the post-primary polls err in calculating head-to-head favorability as a function of the total number of respondents regardless of their familiarity with Dr. Ayyadurai's name. In Dr. Shah's view, favorability should be determined by dividing a candidate's favorables by the number of respondents who recognize his or her name.[7] Putting aside that a candidate's visibility a month before election day is a fair measure of a political campaign's success,[8] Dr. Shah overlooks the fact that perfect knowledge of the competing candidates is not a prerequisite in the actual voting.[9]

---

[6] Dr. Ayyadurai also argues that there is no compelling state interest in excluding him because he is a serious candidate and his inclusion would not result in a spectacle like the one that marred the early Republican Presidential primary debates in 2016, as he is the only other candidate qualified for the ballot. That may be true, but the reasonableness of the first of the eligibility requirements, ballot qualification, is not in dispute.

[7] According to Dr. Shah, his calculations would show that Dr. Ayyadurai exceeds the 10% polling threshold: 15% among very likely and likely voters, around 20% among registered voters, and 41% among somewhat likely voters.

[8] Even if 100% of respondents who were familiar with a candidate preferred that candidate, this would be a meaningful indication of popular support (or likely election outcome) where the familiar respondents amounted only to a small fraction of the total electorate.

[9] Dr. Shah's method – dividing the number of individuals who prefer a candidate by the number of individuals who are familiar with the candidate – also makes the unstated and unreliable assumption that, in an election

In a second argument, Dr. Ayyadurai advances the non sequitur that because the eligibility criteria, however neutral they may appear on their face, operate to exclude only him from the debate, it follows that they are not viewpoint neutral. Why it so follows is never explained. His political and social views, whatever they may be, are no doubt personal and idiosyncratic to him, and may differ in many material respects from those of the major party candidates. But he offers no evidence that animus towards a particular opinion or opinions that he holds motivated the debate sponsors in setting the 10% polling eligibility threshold.

---

context, a likely voter who indicates a preference for a candidate is necessarily familiar with the candidate. To use Dr. Shah's example of food preferences among samosas, hot dogs, and hamburgers, a vegetarian respondent may well indicate preference for the samosa without knowing what it consists of because of his or her dislike of the known options. This is particularly so in the election context where voters may decide based on non-candidate-specific factors such as party affiliation or ballot position.

Even accepting this assumption, Dr. Shah's report errs in his recalculation of head-to-head favorability. Unlike individual favorability, the total head-to-head favorability of the three candidates (including non-respondents) must total 100%. In Dr. Shah's food preference example, his recalculated head-to-head favorability rating totals 129%, and that does not take into account the 1 out of 100 respondents who did not indicate a preference. *See* Shah Report (Dkt # 20-2) at 10, Table F. Without scaling back to 100% (including the non-respondents), Dr. Shah's method overinflates his recomputed head-to-head favorability rating for Dr. Ayyadurai.

As to the legitimacy of the threshold itself, *Arkansas Educ. Television Comm'n* is directly on point. In that case, the Supreme Court held that a state-owned public television broadcaster's decision to exclude an independent political candidate "was a reasonable, viewpoint-neutral exercise of journalistic discretion." 523 U.S. at 669. There, the Court observed that the disappointed candidate's lack of public support, meager financial backing, and limited media coverage justified the conclusion that he "was excluded not because of his viewpoint but because he had generated no appreciable public interest." *Id.* at 682. Here, the criteria used – requiring qualified candidates with a formal campaign and demonstrated public and monetary support – are similarly reasonable, including the ten percent threshold in public polling.[10] *See Johnson v. Suffolk Univ.*, 2002 WL 31426734, at *2 (D. Mass. 2002) (upholding the "[e]xclusion of a candidate because her candidacy has generated no appreciable voter interest, according to objective criteria," namely at least 15% standing in the relevant polls). In short, the University's decision to exclude Dr. Ayyadurai from the October 30, 2018 debate for a demonstrated lack of public support "was a

---

[10] The requirement that a candidate poll 10% or more in two recent independent polls is a far more objective criterion than the Supreme Court-sanctioned lack of "strong popular support" standard used by the Arkansas Educational Television Commission. *Id.* at 670.

reasonable, viewpoint-neutral exercise of journalistic discretion consistent with the First Amendment." *Arkansas Educ. Television Comm'n*, 523 U.S. at 683.

## ORDER

For the foregoing reasons, the motion for a preliminary injunction is DENIED.  Both because participation in the October 30, 2018 debate is the sole remaining issue in the case and to insure that there are no jurisdictional impediments to Dr. Ayyadurai's right of appeal, should he choose to exercise it, the court will dismiss the case with prejudice.  The Clerk will enter judgment accordingly for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE